```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
RAHUL MANCHANDA,                                                 :
                                                                 :
                                       Plaintiff,                :
                                                                 :    23 Civ. 9292 (JPC) (KHP)
                  -v-                                            :
                                                                 :             ORDER
ATTORNEY GRIEVANCE COMMITTEE CHIEF                               :
ABIGAIL REARDON, STAFF ATTORNEY REMI                             :
SHEA, CHIEF COUNSEL JORGE DOPICO, JUDGE                          :
ROLANDO ACOSTA, NYPD, and FBI NYC FIELD                          :
OFFICE,                                                          :
                                                                 :
                                       Defendants.               :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Plaintiff Rahul Manchanda, an attorney who is admitted to practice in this Court and the courts of the State of New York, brings this *pro se* action against Abigail Reardon, Esq., the Chairwoman of the Attorney Grievance Committee of the New York Supreme Court, Appellate Division, First Department ("First Department"); Remi Shea, Esq., an attorney with the First Department; Jorge Dopico, Esq., the Chief Attorney of the First Department's Attorney Grievance Committee; Justice Rolando Acosta, the Presiding Justice of the First Department (Reardon, Shea, Dopico, and Justice Acosta, collectively, the "Individual Defendants"); the New York City Police Department ("NYPD"); and the "NYC Field Office"[1] of the Federal Bureau of Investigation

---

[1] The Federal Bureau of Investigation does not appear to have a field office specifically for New York City, but rather a New York Field Office, located in New York City, that "[c]overs the five boroughs of New York City, eight counties in New York state, and La Guardia Airport and John F. Kennedy International Airport." FBI, *Contact Us: Field Offices*, available at https://www.fbi.gov/contact-us/field-offices/ (last visited Dec. 21, 2023). In any event, the Court assumes that Plaintiff intends to bring claims against the Federal Bureau of Investigation.

("FBI"). Dkt. 15 ("Am. Compl."). While hardly clear, Plaintiff appears to allege violations of federal and state law arising from actions taken by the First Department's Attorney Grievance Committee, presumably in proceedings concerning attorney disciplinary charges against him.

For the reasons that follow, the Court *sua sponte* dismisses any claims that seek to initiate a criminal prosecution of Defendants or others, as a private citizen lacks standing to cause a criminal prosecution. The Court also *sua sponte* dismisses claims against the United States of America—including the FBI—on sovereign immunity grounds, other than any claims brought against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671-80. To the extent Plaintiff seeks to assert any claims against the United States under the FTCA, he is ordered to show cause in writing within fourteen days of this Order that he has complied with the administrative exhaustion requirements of the FTCA and further is on notice that his failure to do so will result in dismissal of such claims for lack of subject matter jurisdiction.

The Court similarly puts Plaintiff on notice of its intent to *sua sponte* dismiss any claims under 42 U.S.C. § 2000ee-1, because that statute lacks a private right of action, as well as any claims for damages against the Individual Defendants under federal law because they appear to be entitled to judicial or quasi-judicial immunity based on the allegations in the Amended Complaint. The Court also puts Plaintiff on notice that it intends to dismiss any federal claims against the NYPD, as that agency is not a separate entity that can be sued, and against the City of New York, because it appears Plaintiff has not stated a legally cognizable claim for municipal liability under 42 U.S.C. § 1983, nor has he articulated any basis for the City's liability under the other federal causes of action pleaded in the Amended Complaint. The Court also provides notice that it, in the event all federal claims are dismissed, it does not intend to exercise supplemental jurisdiction over

any remaining state claims, including any state claims against the City. The Court will afford Plaintiff the opportunity to address the viability of his Section 2000ee-1 claims and of any of his federal causes of action against the Individual Defendants, the NYPD, and the City of New York. No later than fourteen days from the date of this Order, Plaintiff must show cause in writing why any of these claims should not be dismissed. Similarly, by that date, Plaintiff also must show cause in writing why the Court should not decline to exercise supplemental jurisdiction over any remaining state claims in the event the federal claims are dismissed.

Lastly, the Court also gives Plaintiff notice that it intends to deny him leave to replead any of the claims that are the subject of this Order for futility reasons. He too may address in writing within fourteen days of this Order why he disagrees with that assessment and believes he should be granted leave to replead.

## I. Background

The nine causes of action listed in the Amended Complaint cover a broad range of alleged violations of federal and state law. The first cause of action alleges violations of 42 U.S.C. § 1983 for deprivation of rights under color of law, Am. Compl. ¶¶ 21-22; the second cause of action purports to allege violations of 42 U.S.C. § 2000ee-1(e) for retaliation, *id.* ¶¶ 23-24; the third cause of action alleges violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510-2523, *id.* ¶¶ 25-26; the fourth cause of action alleges violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *id.* ¶¶ 27-28; the fifth cause of action alleges abuse of process, *id.* ¶¶ 29-30; the sixth cause of action alleges malicious prosecution, *id.* ¶¶ 31-32; the seventh cause of action alleges computer trespass, *id.* ¶¶ 33-34; the eighth cause of action alleges conversion of computer data, *id.* ¶¶ 35-36; and the ninth cause of action alleges judicial bias and prejudice, *id.* ¶¶ 37-38. For each cause of action, Plaintiff seeks "actual and punitive damages in

the amount of $20,000,000." *Id.* ¶¶ 22, 24, 26, 28, 30, 32, 34, 36, 38.  Plaintiff additionally may be seeking to hold Defendants criminally liable, as the Amended Complaint has a section titled "CRIMINAL ACTS" and alleges violations of 18 U.S.C. § 242, *id.* ¶¶ 10-15, and further alleges violations of "civil and criminal RICO," *i.e.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, Am. Compl. ¶ 3, as well as other statutes that allow for criminal liability, specifically, 18 U.S.C. § 3121, *id.* ¶ 5, the ECPA, *id.* ¶¶ 5, 25-26, and the CFAA, *id.* ¶¶ 6, 27-28.

The factual underpinnings of Plaintiff's claims are rather unclear, but appear to relate to attorney disciplinary proceedings before the First Department's Grievance Committee.  He summarizes that his case

> concerns the non-stop malicious prosecution, aggravated harassment, abuse of process, vexatious litigation, forum shopping, judicial corruption, judicial bias, civil and criminal RICO, judicial misconduct, public corruption, unlawful trespassing into computer networks, conversion/theft of computer data, illegal electronic surveillance and wiretapping, committed jointly by codefendants since at least 2021 all the way to the present day, directly and proximately contributing to and causing Plaintiff Rahul Manchanda's heart attack and cardiovascular problems, as well as now his spouse['s] . . . colloidal cyst/brain tumor problems, further bankrupting plaintiff[] by co-defendants['] coordinated legal onslaught going on many years now, with no basis in fact, evidence, or substantiation of claims.

*Id.* ¶ 3.  He further alleges that Defendants

> are weaponizing the judicial and legal system, abusing their position and power to remove Plaintiff's law license of 21 years, "soft kill" the plaintiff on behalf of Jewish Organized Crime, Extremist Jewish Zionist donors, financial contributors, oligarchs, within their orbit and sphere of influence, simply for Plaintiff expressing his political views that go against hardcore extremist Jewish and Zionist domestic and foreign policy.

*Id.* ¶ 4.

Plaintiff proceeds to allege corruption on the part of Reardon, the Chairwoman of the First Department's Attorney Grievance Committee, that resulted in her "going after . . . [Plaintiff] and

4

[his] law license and law firm." *Id.* ¶ 19. And he alleges that Shea, Dopico, and Justice Acosta "have been actively aiding and abetting Abigail Reardon's crazed and ruthless crusade against . . . Plaintiff for many years, breaking numerous laws and ethics along the way." *Id.* ¶ 20. Plaintiff's allegations also reach law enforcement. He contends that the FBI has "virtually never provided assistance, protection, or guidance to [Plaintiff] when he was a victim of serious crime, including but not limited to death threats, extortion, blackmail, aggravated harassment, and other crimes by organized crime or individual criminals, most notably [J]ewish organized crime, that is the subject of this lawsuit." *Id.* ¶ 20a. As to both the FBI and the NYPD, he alleges that "most times[,] . . . [they] would turn on . . . [Plaintiff] when he reported crime, rather than go after the criminals themselves," *id.* ¶ 20b, and that the agencies have a policy of "allowing criminals to attack, terrorize, threaten, harass, and otherwise victimize [him]," *id.* ¶ 20c.

## II. Applicable Law

A district judge has the authority to dismiss a complaint *sua sponte*, even when, as here, the plaintiff has paid the filing fees, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (per curiam) (holding that Court of Appeals has inherent authority to dismiss a frivolous appeal)), or that subject matter jurisdiction is lacking, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). A district judge additionally "has the power to dismiss a complaint *sua sponte* for failure to state a claim," *Leonhard v. United States,* 633 F.2d 599, 609 n.11 (2d Cir. 1980), so long as the plaintiff is given notice and "an opportunity to be heard," *Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir. 1991) (per curiam). To adequately state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads

5

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In making this determination, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), but it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

Normally, a district court must afford special solicitude to a *pro se* litigant; this special solicitude includes "liberal construction of pleadings, motion papers, and appellate briefs," as well as "relaxation of the limitations on the amendment of pleadings." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). But "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented. The ultimate extension of this reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all." *Id.* at 102 (citation omitted); *see Ye v. N.Y. Bd. of Elections*, No. 20 Civ. 11072 (JPC), 2021 WL 37575, at *3 (S.D.N.Y. Jan. 5, 2021).

### III. Discussion

#### A.   Claims Seeking Criminal Prosecution

Although not among the nine enumerated causes of action, *see* Am. Compl. ¶¶ 21-38, Plaintiff suggests throughout the Amended Complaint that he is requesting the criminal prosecution of the Individual Defendants. As noted, the Amended Complaint includes a section titled, "CRIMINAL ACTS," *id.* ¶¶ 10-15, and Plaintiff identifies criminal statutes which he seems to contend that Defendants violated, to include "criminal RICO," *id.* ¶ 3, and 18 U.S.C. § 242, *id.* ¶¶ 10-15. He also alleges violations of 18 U.S.C. § 3121, *id.* ¶ 5, the ECPA, *id.* ¶¶ 5, 25-26, and the CFAA, *id.* ¶¶ 6, 27-28, all of which have criminal provisions. "[T]he decision to prosecute is

solely within the discretion of the prosecutor," *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981), who is "immune from control or interference by citizen or court," *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Because Plaintiff lacks standing to initiate a criminal prosecution, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 618-19 (1973), any claims seeking the criminal prosecution of the Individual Defendants or anyone else are dismissed for lack of subject matter jurisdiction. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim." (internal quotation marks and citation omitted)).

**B.     Claims Under 42 U.S.C. § 2000ee-1**

The second cause of action in the Amended Complaint alleges that Defendants violated 42 U.S.C. § 2000ee-1, Am. Compl. ¶¶ 23-24, and the Amended Complaint also has another paragraph that quotes Section 2000ee-1, with a heading, "42 U.S. CODE § 2000EE-1. PRIVACY AND CIVIL LIBERTIES OFFICERS," *id.* ¶ 16. There is no private right of action under 42 U.S.C. § 2000ee-1, as Plaintiff recently was advised in another case he brought in this District. *See Manchanda v. Lewis*, No. 20 Civ. 1773 (GBD) (RWL), 2021 WL 746212, at *7 (S.D.N.Y. Feb. 23, 2021), *report & recommendation adopted*, 2021 WL 1192083 (S.D.N.Y. Mar. 30, 2021), *aff'd*, No. 21-1088-cv, 2021 WL 5986877 (2d Cir. Dec. 17, 2021) (summary order), *cert. denied*, 143 S. Ct. 96 (2022); *see Muzumala v. Mayorkas*, No. 22 Civ. 3789 (JGK), 2022 WL 2916610, at *4 (S.D.N.Y. July 22, 2022). The Court accordingly gives Plaintiff notice of its intent to dismiss the second cause of action for failure to state a claim. The Court will provide Plaintiff with an opportunity to be heard as to the viability of this cause of action. Plaintiff is ordered to show cause, in writing, within fourteen days of this Order why any Section 2000ee-1 claims should not be dismissed as not legally cognizable.


C. **Claims Against the FBI and the United States of America**

The United States of America is immune from suit, and "hence may be sued only to the extent that it has waived sovereign immunity by enacting a statute consenting to suit." *Davis v. Garcia*, No. 07 Civ. 9897 (CLB), 2008 WL 2229811, at *10 (S.D.N.Y. May 27, 2008); *see United States v. Sherwood*, 312 U.S. 584, 586 (1941). Federal courts therefore are barred from hearing all suits against the federal government, including suits against any part of the federal government, such as the FBI, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *Sherwood*, 312 U.S. at 586); *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency . . . is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived."). Relatedly, to the extent the FTCA's waiver of sovereign immunity might apply, the suit may only be brought against the United States, not an individual federal agency. *See Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991); *Holliday v. Augustine*, No. 3:14-CV-855 (SRU), 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015). All claims against the FBI are therefore dismissed.

The Court assumes that Plaintiff wishes to name the United States as the proper federal government defendant instead. But even so, sovereign immunity precludes reliance on many of the federal statutes that Plaintiff cites. Sovereign immunity bars claims against the United States under the CFAA, *see Garland-Sash v. Lewis*, No. 05 Civ. 6827 (WHP), 2007 WL 935013, at *3 (S.D.N.Y. Mar. 26, 2007), *aff'd in part, vacated in part on other grounds*, 348 F. App'x 639 (2d Cir. 2009) (summary order); the ECPA, a statute which even expressly excludes the United States among those who may be sued, *see* 18 U.S.C. § 2520(a); and the civil provision of RICO, *see Fallica v. United States*, No. 08 Civ. 5071 (JFB) (AKT), 2010 WL 11530507, at *2 (E.D.N.Y. Mar. 29, 2010); *Spinale v. United States*, No. 03 Civ. 1704 (KMW) (JCF), 2004 WL 50873, at *6-8

(S.D.N.Y. Jan. 9, 2004), *report & recommendation adopted*, Dkt. 26 (S.D.N.Y. Mar. 31, 2004). Similarly, as Plaintiff was recently advised by another judge in this District, "it is well established that § 1983 does not apply to actions against the federal government or its officers acting under color of federal law." *Manchanda*, 2021 WL 746212, at *5; *accord United States v. Acosta*, 502 F.3d 54, 60 (2d Cir. 2007). Any claims against the United States under the CFAA, the ECPA, RICO, and Section 1983 are therefore dismissed.

To the extent Plaintiff's allegations of violations of Section 1983 and state tort law in his causes of action suggest that he seeks to assert tort claims against the United States, such claims could only potentially be viable under the FTCA pursuant that statute's partial waiver of sovereign immunity for the United States. 28 U.S.C. §§ 1346(b)(1), 2680; *see Liranzo v. United States*, 690 F.3d 78, 85 (2d Cir. 2012). As a condition of the FTCA's waiver of sovereign immunity, and therefore as a prerequisite for this Court's exercise of jurisdiction, a plaintiff must first present a claim to the appropriate federal agency. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived." (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993))); *accord Rivera v. Morris Heights Health Ctr.*, No. 05 Civ. 10154 (SHS), 2006 WL 345855, at *3 (S.D.N.Y. Feb. 14, 2006); *Matthias v. United States*, 475 F. Supp. 3d 125, 135 (E.D.N.Y. 2020). The mandatory exhaustion language of 28 U.S.C. § 2675(a) is clear. An action under the FTCA may not be instituted against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). Only after the agency denies the

claim or fails to respond within six months may a plaintiff file an action under the FTCA in federal court. *See id.*

Plaintiff has not alleged facts demonstrating that he filed an administrative claim under the FTCA with a federal governmental entity for damages and received a final written determination or a lack of response within six months from that governmental entity before bringing this action. Plaintiff therefore is ordered to show cause, in writing and within fourteen days of this Order, why any claims against the United States pursuant to the FTCA should not be dismissed for lack of subject matter jurisdiction on account of his failure to exhaust the FTCA's administrative remedies.

### D.   Claims Against the Individual Defendants

As noted, each of the nine causes of action seeks "actual and punitive damages in the amount of $20,000,000." Am. Compl. ¶¶ 22, 24, 26, 28, 30, 32, 34, 36, 38. To reiterate, the Individual Defendants consist of Reardon who is the Chairwoman of the First Department's Attorney Grievance Committee, Shea who is an attorney with the First Department, Dopico who is the Chief Attorney of the First Department's Attorney Grievance Committee, and Justice Acosta who is the Presiding Justice of the First Department. Each of these four Individual Defendants appears to be immune from suit for damages based on the allegations of the Amended Complaint.

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 9-12 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Judicial immunity does not, however, apply when a judge takes action "outside" his or her

judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). This immunity extends to New York State judges who preside over attorney disciplinary proceedings,[2] and members of the staffs of the attorney grievance committees of the state courts are entitled to quasi-judicial immunity.[3]

---

[2] *See, e.g.*, *McNamara v. Kaye*, No. 06 Civ. 5169 (DLI), 2008 WL 3836024, at *6 (E.D.N.Y. Aug. 13, 2008) ("A number of plaintiff's claims are directed at the . . . Chief Judge of New York State, the . . . Presiding Justice of the Second Department, and the other judicial officers of the Court of Appeals and the Second Department who were involved in plaintiff's disciplinary proceedings. . . . It is well-settled that judges have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities."), *aff'd*, 360 F. App'x 177 (2d Cir. 2009) (summary order); *Bernstein v. New York*, 591 F. Supp. 2d 448, 463 (S.D.N.Y. Aug. 8, 2008) ("Attorney disciplinary proceedings are 'judicial in nature,' so the presiding officers are protected by absolute immunity." (footnote omitted)); *Sassower v. Mangano*, 927 F. Supp. 113, 120 (S.D.N.Y. 1996) ("As a result, Sassower has alleged no basis upon which a fact finder could rationally infer that defendant Judge Mangano and the associate justices of the Second Department acted outside their proper jurisdictional capacities in adjudicating Sassower's disciplinary petition and claims raised in relation thereto, let alone that they acted in the 'clear absence of all jurisdiction.'" (citation omitted)), *aff'd*, 122 F.3d 1057 (2d Cir. 1997) (unpublished opinion).

[3] *See e.g.*, *Neroni v. Coccoma*, 591 F. App'x 28, 30 (2d Cir. 2015) (summary order) (citing *Anonymous v. Ass'n of the Bar of the City of New York*, 515 F.2d 427, 433 (2d Cir. 1975)); *McKeown v. N.Y. State Comm'n on Jud. Conduct*, 377 F. App'x 121, 124 (2d Cir. 2010) (summary order) ("Prosecutors, hearing examiners, and law clerks are eligible for absolute immunity, and those involved in preparing and adjudicating attorney discipline proceedings share analogous roles." (citing, *inter alia*, *Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988))); *Napolitano v. Saltzman*, 315 F. App'x 351, 351-52 (2d Cir. 2009) (summary order) ("Saltzman enjoys absolute immunity for his actions as counsel to the Grievance Committee, which are 'quasi-public adjudicatory [or] prosecutorial' in nature. In receiving the complaints about [an attorney], investigating them, and making recommendations to the Appellate Division, Saltzman was clearly acting within the scope of his jurisdiction. The allegation that he may have violated procedural or ethical rules is irrelevant, as it is the nature of the act and not the impropriety of the act that matters." (citations omitted)); *Feng Li v. Rabner*, No. 15 Civ. 2484 (KBF), 2015 WL 1822795, at *4 (S.D.N.Y. Apr. 22, 2015) ("Because a state grievance committee acts 'as a quasi-judicial body,' its members are entitled to quasi-judicial immunity. Insofar as [the plaintiff] names [grievance committee staff members] for their involvement in the disbarment action, they are entitled to quasi-judicial immunity." (citations omitted)), *aff'd*, 643 F. App'x 57 (2d Cir. 2016) (summary order);

11

Plaintiff appears to seek damages from Reardon, Shea, and Dopico arising from their efforts to investigate him in connection with attorney disciplinary charges and/or with respect to efforts to prosecute him concerning those charges before the First Department. Plaintiff also appears to sue Justice Acosta for damages in connection with his acts when presiding over Plaintiff's attorney disciplinary proceedings. Plaintiff has not made any plausible allegation suggesting that any of these individuals was lacking jurisdiction or acted outside their judicial or quasi-judicial capacity. Accordingly, the Court provides Plaintiff with notice of its intent to dismiss his claims against these four Individual Defendants as frivolous pursuant to doctrines of absolute judicial and quasi-judicial immunity. *See Montero v Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))); *see also Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute]."). Plaintiff is ordered to

---

*Finn v. Anderson*, No. 12 Civ. 5742 (VB), 2013 WL 12085092, at *9 (S.D.N.Y. Sept. 6, 2013) ("[P]ersons working for Grievance Committees, conducting investigations and proceedings, act in a quasi-judicial capacity. Indeed, . . . counsel to New York State Grievance Committees are included among the others who are afforded absolute quasi-judicial immunity."), *aff'd*, 592 F. App'x 16, 19 (2d Cir. 2014) (summary order) ("This Court has consistently extended such 'quasijudicial' immunity to investigators with attorney grievance committees . . . ."); *Weissbrod v. Gonzalez*, No. 13 Civ. 2565 (JMF), 2013 WL 12084506, at *3 (S.D.N.Y. May 2, 2013) ("[B]ecause state bar disciplinary proceedings are clearly judicial in nature, quasi-judicial immunity bars Plaintiff[']s claims against these members of the First Departmental Disciplinary Committee." (citations omitted)), *aff'd*, 576 F. App'x 18 (2d Cir. 2014) (summary order); *Thaler v. Casella*, 960 F. Supp. 691, 700 (S.D.N.Y. 1997) ("[M]embers of bar association disciplinary committees are absolutely immune from suit for damages in their individual capacity, since they act in a 'quasi-public adjudicatory or prosecutorial capacity'. . . . It goes almost without saying that if . . . [the] Chief Counsel to the Grievance Committee is absolutely immune, his law clerk . . . is likewise immune." (citations omitted)); *Sassower*, 927 F. Supp. at 120-21 (S.D.N.Y. 1996) ("[B]ecause state bar disciplinary proceedings are clearly judicial in nature, quasi-judicial immunity bars claims against state bar disciplinary committee members . . . and the members of the Grievance Committee." (footnote and citations omitted)).

show cause, in writing, within fourteen days this Order addressing why his federal claims against the Individual Defendants should not be dismissed.

### E.  Claims Against the NYPD and the City of New York

As an agency of the City of New York, the NYPD is not a separate entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore also gives notice to Plaintiff of its intent to dismiss his federal claims against the NYPD.

To the extent that Plaintiff actually intends to sue the City of New York, such claims also do not appear to be viable. The Court presumes that Plaintiff's theory for the NYPD's liability is premised on 42 U.S.C. § 1983, which is the statute pleaded in the first cause of action, Am. Compl. ¶¶ 21-22, and concerns the agency's alleged failure to investigate criminal activity against him and failure to protect him from harm, *see id.* ¶¶ 20a-20d.[4] Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

To the extent that Plaintiff actually intends to sue the City of New York under Section 1983 under a failure to prosecute or failure to protect theory, such a claim also does not appear to be

---

[4] The Amended Complaint, liberally construed, alleges no other facts or theory that could give rise to liability for the City. *See generally* Am. Compl.

13

viable. When a plaintiff sues a municipality under Section 1983, the plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In *Monell*, the Supreme Court recognized that a municipality can be liable under Section 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Put simply, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (emphasis added); *Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). A plaintiff may plead facts of a policy or custom by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by governmental officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its

employee." *Jones*, 691 F.3d at 80.  Further, if there is no underlying constitutional violation, any claim of municipal liability under Section 1983 must fail.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

      The Amended Complaint is devoid of any allegations to establish the existence of an unconstitutional municipal policy or custom that caused Plaintiff's injuries, or even that he suffered any violation of a constitutional right.  As Plaintiff seems to concede, *see* Am. Compl. ¶ 20d, there is no federal constitutional duty for a government official to investigate criminal activity or to protect an individual from harm.  *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994); *see also Baltas v. Jones*, No. 3:21-CV-469 (MPS), 2021 WL 6125643, at *14 (D. Conn. Dec. 27, 2021) ("[The plaintiff] has no 'constitutional right to an investigation of any kind by government officials.'" (citation omitted)); *Buari v. City of New York*, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) ("[T]here is no constitutional right to an adequate investigation. . . .  Accordingly, a failure to investigate is not independently cognizable as a stand-alone claim under Section 1983." (internal quotation marks and citation omitted)).  Two recognized exceptions exist to this general rule: (1) "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon [the state actor] a corresponding duty to assume some responsibility for his safety and general well-being," *DeShaney*, 489 U.S. at 199-200; and (2) when a state actor affirmatively creates or increases a danger to the plaintiff, *see, e.g.*, *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008).  Even if a plaintiff can plead a Section 1983 claim that falls within one of these exceptions, the plaintiff must further show that the state actor's "behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Id.* (citation omitted).  To the extent

that Plaintiff asserts that the City of New York failed to investigate criminal activity against him or failed to protect him from harm, he does not allege any facts suggesting that either of these two exceptions would apply.

The Court therefore gives Plaintiff notice of its intent to dismiss, for failure to state a claim, his Section 1983 claim against the NYPD and, to the extent he intends to bring one, against the City of New York.  Further, the Amended Complaint contains no allegations that would establish the City's liability under any of the other federal causes of action, which allege violations of 42 U.S.C. § 2000ee01, Am. Compl. ¶¶ 23-24; *see supra* III.B, the ECPA, Am. Compl. ¶¶ 25-26, and the CFAA, *id.* ¶¶ 27-28.  And, as noted in the next section, *see infra* III.F, the Court intends to decline to exercise supplemental jurisdiction over any remaining state law claims, including any remaining state law claims against the City, in the event all federal claims are dismissed.  Plaintiff is afforded the opportunity to respond should he oppose dismissal as to the NYPD and/or the City of New York.  He is ordered to show cause in writing within fourteen days of this Order why these claims too should not be dismissed.

**F.     Supplemental Jurisdiction**

Given that, after receiving any response from Plaintiff, the Court may dismiss all of his federal claims, the Court considers now whether it should exercise supplemental jurisdiction over the remaining state law claims.[5]  A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  The statute does not create a "mandatory rule to be applied inflexibly in all cases."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

---

[5] The Amended Complaint does not allege diversity of citizenship for purposes of 28 U.S.C. § 1332, *see* Am. Compl. ¶¶ 1-2, so the Court assumes that Plaintiff is relying on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for his state law claims.

(1988). Nevertheless, the Second Circuit has held that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kelsey v. City of New York*, 306 F. App'x 700, 703 (2d Cir. 2009) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see also Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the federal claim, citing "the absence of a clearly articulated federal interest"); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction." (internal quotation marks omitted)).

Here, the case is still in the early stages of litigation, without discovery having yet commenced. *See Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 453 n.63 (S.D.N.Y. 2007) ("[A]t early stages in the proceedings, . . . little is to be gained by way of judicial economy from retaining jurisdiction."). Further, comity dictates that Plaintiff's state law causes of action are better suited for resolution in state court. The Court thus intends to conclude that the balance of factors to be considered—judicial economy, convenience, fairness, and comity—point toward declining to exercise supplemental jurisdiction in the event that Plaintiff's federal claims are dismissed. Here too, Plaintiff must show cause in writing within fourteen days of this Order why the Court should not decline to exercise supplemental jurisdiction over those claims.

**G.     Leave to Amend**

The Court further gives notice that it intends to deny Plaintiff leave to replead any of his claims, because granting such leave would be futile. Plaintiff has amended his Complaint once as

17

a matter of course, pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure, adding the FBI and the NYPD as Defendants. Rule 15(a)(2) therefore would apply to any further amendment of his Complaint. Under Rule 15(a)(2), a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). When deciding whether to *sua sponte* grant leave to amend, "courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility." *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020). In this case, for reasons discussed above, the Court is of the view that the claims discussed in this Order are clearly without merit and lack any basis in law—assuming, with respect to any claims against the United States, he has failed to administratively exhaust—and therefore intends to deny leave to replead these claims on futility grounds. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."). Plaintiff may offer his views on this issue as well. Within fourteen days of this Order, he also may address in writing why leave to amend should not be denied with respect to any of the claims that are dismissed pursuant to this Order or for which the Court has stated its intent to dismiss.

### IV. Conclusion

For the reasons set forth above, the Court dismisses *sua sponte* the following claims in the Amended Complaint for lack of jurisdiction: (1) any claims seeking to initiate criminal prosecution; (2) any claims against the FBI; and (3) any claims against the United States of America under 42 U.S.C. § 1983, 42 U.S.C. § 2000ee-1, the CFAA, the EPCA, RICO, and state

law. To the extent Plaintiff intends to pursue any claims against the United States under the FTCA, he is ordered to show cause in writing within fourteen days of this Order why such claims should not be dismissed because of his failure to comply with the FTCA's administrative exhaustion requirements; failure to show cause will result the Court dismissing all claims against the United States for lack of subject matter jurisdiction. The Court also provides notice to Plaintiff of its intent to *sua sponte* dismiss any other claims under 42 U.S.C. § 2000ee-1, all federal claims against the Individual Defendants, all federal claims against the NYPD, and all federal claims against the City. Plaintiff is ordered to show cause in writing within fourteen days of this Order why these claims are legally viable and should not be dismissed. The Court also gives notice that, in the event all federal claims are dismissed, it intends to decline to exercise supplemental jurisdiction over any remaining state law claims. Plaintiff also is ordered to show cause in writing within fourteen days why the Court should not decline to exercise supplemental jurisdiction over such claims. Lastly, the Court provides notice of its intent not to grant Plaintiff leave to replead his claims. Should Plaintiff oppose the denial of repleading his claims, Plaintiff must make a written submission addressing that issue as well within fourteen days of this Order.

    In light of this Order, all deadlines for Defendants to respond to the Amended Complaint are adjourned *sine die*.

    SO ORDERED.

Dated:   December 22, 2023
            New York, New York

                                              JOHN P. CRONAN
                                      United States District Judge