UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                                                                   :
RAHUL MANCHANDA,                                                   :
                                                                   :
                        Plaintiff,                                :
                                                                   :
            -v-                                                    :          23 Civ. 9292 (JPC) (KHP)
                                                                   :
ATTORNEY GRIEVANCE COMMITTEE CHIEF                                 :          OPINION AND ORDER
ABIGAIL REARDON, STAFF ATTORNEY REMI                              :
SHEA, CHIEF COUNSEL JORGE DOPICO, JUDGE                           :
ROLANDO ACOSTA, NYPD, and FBI NYC FIELD                           :
OFFICE,                                                            :
                                                                   :
                        Defendants.                                :
                                                                   :
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On December 22, 2023, the Court *sua sponte* dismissed any claims by Plaintiff Rahul

Manchanda that seek to initiate a criminal prosecution and against the Federal Bureau of

Investigation ("FBI") or the United States other than under the Federal Tort Claims Act ("FTCA"),

28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671-80, ordered Plaintiff to show cause why any claims

under the FTCA should not be dismissed for failure to exhaust, and further provided him with

notice of the Court's intent to dismiss any remaining federal claims, to decline to exercise

supplemental jurisdiction over his state law claims, and to deny leave to amend. *See Manchanda*

*v. Reardon ("Manchanda I")*, No. 23 Civ. 9292 (JPC), 2023 WL 8879226 (S.D.N.Y. Dec. 22,

2023). Plaintiff responded on December 23, 2023 by, among other things, attaching exhibits which

he maintained demonstrate his compliance with the FTCA's administrative exhaustion

requirement. After reviewing those materials, the Court advised Plaintiff on January 2, 2024 that

it appeared that he lacks a viable cause of action against the United States—both for failing to

exhaust his administrative remedies and for failing to state a claim—and provided notice of its intent to dismiss any FTCA claims. *See Manchanda v. Reardon ("Manchanda II")*, No. 23 Civ. 9292 (JPC), 2024 WL 259776 (S.D.N.Y. Jan. 2, 2024). Plaintiff responded later that day, defending his claims in this action and requesting the undersigned's recusal, and again on January 3, 2024, providing more materials trying to show his exhaustion under the FTCA.

Having considered the allegations in the Amended Complaint and all of Plaintiff's submissions following the Court's Orders of December 22, 2023 and January 2, 2024, the Court denies Plaintiff's recusal application, dismisses his federal claims, declines to exercise supplemental jurisdiction over his state law claims, and denies him leave to amend on futility grounds.

## I. Procedural History

### A. The Amended Complaint

In his Amended Complaint, Plaintiff brings nine causes of action under federal and state law: (1) violations of 42 U.S.C. § 1983 for deprivation of rights under color of law, Dkt. 15 ("Am. Compl.") ¶¶ 21-22; (2) violations of 42 U.S.C. § 2000ee-1(e) for retaliation, *id.* ¶¶ 23-24; (3) violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510-2523, *id.* ¶¶ 25-26; (4) violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *id.* ¶¶ 27-28; (5) abuse of process, *id.* ¶¶ 29-30; (6) malicious prosecution, *id.* ¶¶ 31-32; (7) computer trespass, *id.* ¶¶ 33-34; (8) conversion of computer data, *id.* ¶¶ 35-36; and (9) judicial bias and prejudice, *id.* ¶¶ 37-38.[1]  For each cause of action, Plaintiff seeks "actual and punitive damages in

---

[1] The Amended Complaint also has a section titled "CRIMINAL ACTS" where Plaintiff alleges violations of 18 U.S.C. § 242, Am. Compl. ¶¶ 10-15, and he alleges elsewhere violations of various statutes that allow for criminal liability, *id.* ¶¶ 3, 5-6, 27-28.  In the December 22, 2023 Order, the Court dismissed any claims seeking the criminal prosecution of others for lack of standing. *Manchanda I*, 2023 WL 8879226, at *4.  In his responses to the Court's December 22,

2

the amount of $20,000,000." *Id.* ¶¶ 22, 24, 26, 28, 30, 32, 34, 36, 38.  Plaintiff names as Defendants

Abigail Reardon, Esq., the Chairwoman of the Attorney Grievance Committee of the New York

Supreme Court, Appellate Division, First Department (the "First Department"); Remi Shea, Esq.,

an attorney with the First Department; Jorge Dopico, Esq., the Chief Attorney of the First

Department's Attorney Grievance Committee; Justice Rolando Acosta, the Presiding Justice of the

First Department (Reardon, Shea, Dopico, and Justice Acosta, collectively, the "Individual

Defendants"); the New York City Police Department ("NYPD"); and the "NYC Field Office" of

the FBI, *id.* at 1.[2]

As discussed in the Court's December 22, 2023 Order, the claims in the Amended

Complaint appear to arise from Plaintiff's disciplinary proceedings before the First Department's

Grievance Committee. *Manchanda I*, 2023 WL 8879226, at *2.  He alleges such acts as "non-stop

malicious prosecution, aggravated harassment, abuse of process, vexatious litigation, forum

shopping, judicial corruption, judicial bias, civil and criminal RICO, judicial misconduct, public

corruption, unlawful trespassing into computer networks, conversion/theft of computer data,

illegal electronic surveillance and wiretapping, committed jointly by codefendants," Am. Compl.

¶ 3, although he provides scant factual allegations to support these accusations, *see generally id.*

He further alleges, again without any allegations to lend factual support, that Defendants

> are weaponizing the judicial and legal system, abusing their position and power to
> remove Plaintiff's law license of 21 years, "soft kill" the plaintiff on behalf of
> Jewish Organized Crime, Extremist Jewish Zionist donors, financial contributors,

---

2023 and January 2, 2024 Orders, Plaintiff now disavows seeking to cause the criminal prosecution
of others through this lawsuit.  *See* Dkt. 53 ("Dec. 23, 2023 Response") at 2 ("None of our civil
lawsuit complaint claims seek to cause a criminal prosecution, they are simply background
information . . . ."); Dkt. 57 ("Jan. 2, 2024 Response") at 1 ("[W]e have told this court countless
times that we did not make any claims seeking criminal prosecution, but the court ignores this.").

[2] The Amended Complaint does not specify which causes of action are brought against
which Defendants, so the Court assumes for purposes of this Opinion and Order that Plaintiff
brings each cause of action against all Defendants.

oligarchs, within their orbit and sphere of influence, simply for Plaintiff expressing his political views that go against hardcore extremist Jewish and Zionist domestic and foreign policy.

*Id.* ¶ 4.  With respect to the Individual Defendants, he alleges misconduct arising from Reardon "going after . . . [Plaintiff] and [his] law license and law firm," *id.* ¶ 19, with the others "aiding and abetting" those efforts, *id.* ¶ 20.  Plaintiff's allegations against the FBI and the NYPD arise from their alleged failure to investigate and prosecute criminal acts against him.  *Id.* ¶¶ 20a-20c.

### B.  The December 22, 2023 Order

On December 22, 2023, the Court *sua sponte* dismissed any claims by Plaintiff that seek to initiate a criminal prosecution of others, as well as any claims against the United States, including the FBI, on sovereign immunity grounds, other than claims brought against the United States under the FTCA.  *Manchanda I*, 2023 WL 8879226, at *4-5.  The Court further ordered Plaintiff to show cause why he has complied with the FTCA's mandatory exhaustion requirement.  *Id.* at *5.  The Court also gave Plaintiff notice of its intent to dismiss his remaining federal claims, as none of them appeared to be legally viable, and provided him an opportunity to be heard on those matters as well.  *Id.* at *4-8.  The Court also provided Plaintiff notice, as well as an opportunity to be heard, of its intent not to exercise supplemental jurisdiction over his state law claims and to deny him leave to amend.  *Id.* at *9.  The Court allowed Plaintiff to file a response addressing these issues within fourteen days of the Order, *i.e.*, by January 6, 2024.  *Id* at *10.

### C.  Plaintiff's December 23, 2023 Response

Plaintiff filed his response the next day, December 23, 2023.  In it, Plaintiff maintained that he had "more than complied with the FTCA requirements of filing claims addressing any and all issues with a relevant government agency," Dec. 23, 2023 Response at 1, and attached exhibits that he maintained demonstrated his exhaustion, Dkt. 53-1.  The December 23, 2023 Response further addressed some of the issues raised in the December 22, 2023 Order, arguing that "there is

no judicial or quasi-judicial immunity for intentional torts or criminal acts proximately resulting in serious personal injury, as is the case here."   Dec. 23, 2023 Response at 2; *accord id.* at 4. Plaintiff's Response additionally sought to defend the viability of his state law claims, *id.* at 2-3, although he did not address whether the Court should exercise supplemental jurisdiction over them if his federal claims are dismissed, *see generally id.*   He also appeared to acknowledge that his claim under 42 U.S.C. § 2000ee-1 is not viable, further stating that he "is willing to forego this as a formal claim."   *Id.* at 3.   And Plaintiff contended that he "allege[s] (with evidence) that the FBI, NYPD, and [the Attorney Grievance Committee] worked in tandem, together, to send dangerous and mentally unstable undercovers and informants who committed crimes and intentional torts against plaintiff."   *Id.*   Similarly, Plaintiff asserted that "this Court can not [sic] dismiss our claims against co-defendant NYPD when it worked together in tandem with the FBI, [the Attorney Grievance Committee], and enjoyed its federal funding, which is alleged in this lawsuit."   *Id.* at 4.

### D.  The January 2, 2024 Order

After reviewing Plaintiff's December 23, 2023 Response, the Court issued an additional Order on January 2, 2024.   *Manchanda II*, 2024 WL 259776.   In the Order, the Court advised Plaintiff of its intent to dismiss any FTCA claims as it appears from his December 23, 2023 Response that he had not satisfied the FTCA's administrative exhaustion requirement.   *Id.* at *1; *see* 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(a).   The Court further advised Plaintiff that, even had he exhausted, he would not appear to have a viable cause of action against the United States because the decisions of a federal law enforcement agency to investigate and respond to reports of criminal activity are discretionary acts for which a cause of action for monetary relief under the FTCA does not lie.   *Manchanda II*, 2024 WL 259776, at *2; *see* 28 U.S.C. § 2680(a).   The Court therefore ordered Plaintiff to show cause within fourteen days, *i.e.*, by January 16, 2024, why any

claims against the United States are legally viable and should not be dismissed and, assuming he

seeks to replead such claims, why leave to amend should not be denied.  *Manchanda II*, 2024 WL

259776, at *2.

**E.  Plaintiff's January 2 and January 3, 2024 Responses**

Plaintiff promptly filed two more responses.  First, later in the day on January 2, 2024,

Plaintiff filed a submission that primarily continued to maintain that he had satisfied the FTCA's

exhaustion requirement.  He argued that he had "provided the court with no less than 20 FTCA or

equivalent Form 95s which went unanswered for 6 months or more to the Defendants since 2/2021,

enclosed in the Exhibits section of our Response Letter dated December 23, 2023."  Jan. 2, 2024

Response at 1.  Among other arguments, Plaintiff contended that "the court misinterprets emails

as the claims/complaints, rather than what they actually were – proof of claims/complaints that

were then forwarded to multiple other local, state and federal investigative/law enforcement

agencies to also investigate side by side."  *Id.* at 2.  Plaintiff also maintained that "the court ignores

that we also allege intentional torts causing personal injury, not just failure to investigate, as well

as sending undercovers and informants who committed intentional torts/criminal acts against us,

causing substantial personal injury, not just that the FBI/NYPD refused to investigate crime against

us."  *Id.*  Lastly, explaining that "it appears that Judge John P. Cronan is committing gross judicial

misconduct," *id.* at 2, Plaintiff enclosed a judicial misconduct complaint purportedly filed against

the undersigned, Dkt. 57-1.  Plaintiff further requested that his submission "be construed as a

formal Letter of Recusal from this case for bias, incompetence, public corruption, judicial

misconduct, etc."  Jan. 2, 2024 Response at 2.

Then, on January 3, 2024, Plaintiff filed another response to the January 2, 2024 Order.

Dkt. 58 ("Jan. 3, 2024 Response," along with the Dec. 23, 2023 Response and the Jan. 2, 2024

Response, the "Responses").  Explaining that he had conducted "another 'deep dive,'" Plaintiff submitted what he maintained are "additional complaints which are either Form 95 or equivalent in order to give adequate notice of the targeted parties/agencies about the allegations/subject matter contained therein."  *Id.*; *see* Dkt. 58-1.

## II.  Judicial Recusal

As noted, Plaintiff attached to his January 2, 2024 Response a judicial misconduct complaint that he purportedly filed against the undersigned, Dkt. 57-1, and requested that his filing "be construed as a formal Letter of Recusal from this case."  Jan. 2, 2024 Response at 2.

Under 28 U.S.C. § 455(a), a judge shall disqualify himself or herself "in any proceeding in which [the judge's] impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  "This provision governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown."  *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003).  "The determination of whether such an appearance has been created is an objective one based on what a reasonable person knowing all the facts would conclude."  *Id.*  In addition, under 28 U.S.C. § 455(b)(1), a judge shall disqualify himself or herself where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

Recusal is not warranted here.  A litigant cannot force a judge's recusal merely by filing a judicial misconduct complaint.  *See United States v. Martin-Trigona*, 759 F.2d 1017, 1020-21 (2d Cir. 1985) (explaining after a litigant initiated a new lawsuit against the presiding judge and his wife in state court and then moved to recuse the judge, the judge "properly refus[ed] to recuse himself," as "to permit a litigant to obtain disqualification, without reasonable grounds, of successive judges in a case would interfere with the administration of justice and that [the plaintiff]'s allegations afforded no basis for an inference that the judge's remaining in the case

would create even an appearance of impropriety"); *Kampfer v. Gokey*, 175 F.3d 1008, 1999 WL 97234, at *1 (2d Cir. 1999) (unpublished) (affirming the district judge's denial of the plaintiffs' motion to recuse because, *inter alia*, the "plaintiffs had filed a judicial misconduct complaint against him," explaining that a litigant cannot "force a judge's recusal merely by filing suit against him or her" (citing *Martin-Trigona*, 759 F.2d at 1020-21)); *Penn v. City of New York*, No. 19 Civ. 2106 (JMF), 2019 WL 2085135, at *1 (S.D.N.Y. May 13, 2019) ("It is well settled that a party may not procure a judge's recusal merely by suing the judge."). Nor has Plaintiff provided any basis for the undersigned to recuse from presiding over this case. Pointing out possible deficiencies in a pleading that may require dismissal, and giving a party the opportunity to address those issues, hardly reflects a judge's "bias, incompetence, [or] public corruption," or otherwise amounts to "judicial misconduct." Jan. 2, 2024 Response at 2; *see also LoCascio v. United States*, 473 F.3d 493, 495 (2d Cir. 2007) ("Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

### III. Dismissal

#### A. Applicable Law

A district judge has the authority to dismiss a complaint *sua sponte*, even when, as here, the plaintiff has paid the filing fees, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (per curiam) (holding that Court of Appeals has inherent authority to dismiss a frivolous appeal)), or that subject matter jurisdiction is lacking, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999). A district judge additionally "has the power to dismiss a complaint *sua sponte* for failure to state a claim," *Leonhard v. United States,* 633 F.2d 599, 609 n.11 (2d Cir. 1980), so long as—as occurred here—the plaintiff is given notice and "an opportunity to be heard," *Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir. 1991) (per curiam).

To adequately state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In making this determination, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), but it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).  "A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic[,]' or 'delusional.'" *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

Normally, a district court must afford special solicitude to a *pro se* litigant; this special solicitude "most often consists of liberal construction of pleadings, motion papers, and appellate briefs," as well as a "relaxation of the limitations on the amendment of pleadings." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  But "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented.  The ultimate extension of this reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all." *Id.* at 102 (citation omitted); *see Ye v. N.Y. Bd. of Elections*, No. 20 Civ. 11072 (JPC), 2021 WL 37575, at *3 (S.D.N.Y. Jan. 5, 2021).  Plaintiff alleges that he is an attorney in New York City. *See, e.g.*, Am. Compl. ¶¶ 1 ("Plaintiff, at all times relevant hereto, works and owns Manchanda Law Office PLLC, located at 30 Wall Street, 8th Floor, New York,

NY 10005."), 19 (alleging that Reardon "is abusing her position . . . by going after lawyers who criticize or file lawsuits against her Jewish billionaire oligarch cronies and business contacts, or criticize U.S. foreign policy blindly supporting Israel's human rights violations against Palestinians and other Muslims/Arabs, *such as undersigned lawyer Rahul Manchanda* and [his] law license and law firm" (emphasis added)); *see also* https://manchanda-law.com/ (last visited Feb. 1, 2024).  Accordingly, Plaintiff's pleadings are entitled to no special solicitude.

### B.  Discussion

For reasons that follow, the Court concludes that dismissal is required for each of Plaintiff's federal causes of action.  The Court starts with Plaintiff's second cause of action, brought under 42 U.S.C. § 2000ee-1, for which there is no private right of action.  The Court then turns to Plaintiff's other claims against each of the Defendants: the FBI (construed to include the United States), the Individual Defendants, and the NYPD (construed to include the City of New York).

### 1.  Claims Under 42 U.S.C. § 2000ee-1

The second cause of action alleges that Defendants violated 42 U.S.C. § 2000ee-1, Am. Compl. ¶¶ 23-24, and the Amended Complaint also has another paragraph that quotes Section 2000ee-1, with a heading, "42 U.S. CODE § 2000EE-1. PRIVACY AND CIVIL LIBERTIES OFFICERS," *id.* ¶ 16.  In the December 22, 2023 Order, the Court gave Plaintiff notice of its intent to dismiss the second cause of action for failure to state a claim.  *Manchanda I*, 2023 WL 8879226, at *4.  In his December 23, 2023 Response, Plaintiff seems to concede that he does not have a viable claim under Section 2000ee-1 and withdraws the second cause of action.  *See* Dec. 23, 2023 Response at 3 ("Regarding the claim mentioning 42 U.S.C. § 2000ee-1, we recognize that recently the statute was clarified to not provide a right to private action, however we only focused on the 'retaliation' aspect of this statute for filing civil rights complaints with ICE/DHS, which we did

here, and also experienced from the defendants . . . and plaintiff is willing to forgo this as a formal claim[.]").

Indeed, as Plaintiff has been made aware by another judge in this District, there is no private right of action under 42 U.S.C. § 2000ee-1. *See Manchanda v. Lewis*, No. 20 Civ. 1773 (GBD) (RWL), 2021 WL 746212, at *7 (S.D.N.Y. Feb. 23, 2021), *report & recommendation adopted by* 2021 WL 1192083 (S.D.N.Y. Mar. 30, 2021), *aff'd*, No. 21-1088-cv, 2021 WL 5986877 (2d Cir. Dec. 17, 2021) (summary order), *cert. denied*, 143 S. Ct. 96 (2022); *see Muzumala v. Mayorkas*, No. 22 Civ. 3789 (JGK), 2022 WL 2916610, at *4 (S.D.N.Y. July 22, 2022). The second cause of action is therefore dismissed.

### 2. Claims Against the FBI and the United States of America

In the Court's December 22, 2023 Order, the Court dismissed all claims against the FBI, because to the extent the FTCA's wavier of sovereign immunity might apply in this case, the proper defendant would be the United States, not the FBI. *Manchanda I*, 2023 WL 8879226, at *4; *see Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); *Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991). Further, the Court explained that sovereign immunity bars Plaintif f from proceeding against the United States under the federal statutes that he has pleaded, specifically, 42 U.S.C. § 1983 (first cause of action), the EPCA (third cause of action), and the CFAA (fourth cause of action). *Manchanda I*, 2023 WL 8879226, at *5.[3] And to the extent the Amended Complaint's citation to civil RICO provisions, Am. Compl. ¶ 3, suggest that he seeks to proceed under that statute, Congress also has not waived sovereign immunity there either.

---

[3] Further, as noted at *supra* III.B.1, there is no private right of action under 42 U.S.C. § 2000ee-1 (second cause of action), so that statute necessarily does not waive the United States's sovereign immunity.

*Manchanda I*, 2023 WL 8879226, at *5.  The Court therefore also dismissed all such claims against the United States.  *Id.*

As the Court explained in the December 22, 2023 Order, to the extent Plaintiff's reliance on Section 1983 and state tort law suggests that he seeks to bring tort claims against the United States, such claims may only be potentially viable under the FTCA's partial waiver of sovereign immunity.  *Id.*  A jurisdictional condition of the FTCA's waiver is administrative exhaustion: a plaintiff must "have first presented the claim to the appropriate Federal agency."  28 U.S.C. § 2675(a).  This requires a plaintiff to have submitted "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident."  28 C.F.R. § 14.2(a).  Only after the agency denies that claim, or fails to respond within six months, may a plaintiff initiate a federal action under the FTCA.  28 U.S.C. § 2675(a); *see Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court.  This requirement is jurisdictional and cannot be waived." (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993))); *accord Rivera v. Morris Heights Health Ctr.*, No. 05 Civ. 10154 (SHS), 2006 WL 345855, at *3 (S.D.N.Y. Feb. 14, 2006); *Matthias v. United States*, 475 F. Supp. 3d 125, 135 (E.D.N.Y. 2020).  Moreover, even if administrative exhaustion is satisfied, the FTCA is a limited waiver of sovereign immunity that does not extend to all possible torts that a plaintiff may bring.  *See Cangemi v. United States*, 13 F.4th 115, 130 (2d Cir. 2021) ("But the FTCA is limited by a number of exceptions, including the so-called 'discretionary function exception,' which bars '[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the

Government, whether or not the discretion involved be abused.'" (quoting 28 U.S.C. § 2680(a)) (alterations in original)).

The Court advised in its December 22, 2023 Order that Plaintiff failed to sufficiently allege exhaustion and gave Plaintiff the opportunity to address that issue. *Manchanda I*, 2023 WL 8879226, at *5. Plaintiff's December 23, 2023 Response did not cure this deficiency. He attached two copies of a Standard Form 95, which lists Plaintiff as the claimant and the FBI as the federal agency, is dated November 3, 2023, and alleges an injury that occurred on that same date. Dkt. 53-1 at 1-2; *id.* at 74-75 (same). But this action had been commenced two weeks earlier on October 21, 2023. Dkt. 1. "Because the exhaustion requirement is jurisdictional, a court lacks subject matter jurisdiction where a suit is initiated on a FTCA claim before the agency makes a final determination on the claim." *Pryce v. United States*, No. 21 Civ. 1698 (KPF), 2022 WL 3155842, at *9 (S.D.N.Y. Aug. 8, 2022) (citing 28 U.S.C. § 2675(a); *McNeil*, 508 U.S. at 113). Similarly, Plaintiff provided what appear to be complaints he filed with the Department of Justice's Office of Professional Responsibility ("OPR") against the "NYC FBI FIELD OFFICE," which alleges an incident occurring on November 3, 2023, Dkt 53-1 at 59-63, and against an FBI agent, which alleges ties of a matrimonial judge to another attorney "based on local Jewish Organized Crime," resulting in an injury occurring on December 11, 2023, *id.* at 64-66. In addition to the fact that these OPR complaints apparently were filed after the commencement of this action, neither complaint amounts to a "written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a). The latter in fact appears to have nothing at all to do with this case. Plaintiff additionally included numerous emails apparently addressed to various government agencies, including emails to accounts ending in "fbi.gov" and others that appear to be addressed to state and city agencies, with many making allegations about certain

Defendants in this case, *e.g.*, Dkt. 53-1 at 3-54; a personal injury claim apparently filed with the New York City Comptroller alleging injury because the FBI did not assist when he was a crime victim, *id.* at 67-73; and other complaints apparently filed with OPR regarding an FBI agent for targeting him, *id.* at 51-54, and regarding an attorney for the United States, *id.* at 55-58.  These communications also do not amount to "written notification of an incident, accompanied by a claim for money damages in a sum certain" received by "a Federal agency."  28 C.F.R. § 14.2(a).

After the Court gave Plaintiff notice in the January 2, 2024 Order that the materials he provided did not seem to establish exhaustion under the FTCA, Plaintiff provided additional submissions on January 3, 2024 after doing "another 'deep dive.'"  Jan. 3, 2024 Response.  The additional submissions also do not establish that he has exhausted his administrative remedies under the FTCA with respect to his claims brought in this case; indeed, many of the attachments are not even filings with the federal government.  He attached four complaints that filed with the United Nations Human Rights Council, Dkt. 58-1 at 18-27, 45-50, and an "Employment Discrimination Complaint" filed with the New York State Division of Human Rights, *id.* at 33-41.  Plaintiff also included more emails sent to addresses that would seem consistent with accounts at the FBI, the NYPD, and the New York Attorney General's Office, in which he complains of cyberstalking, *id.* at 3-4, and requests an investigation of the First Department's Attorney Grievance Committee, *id.* at 13-17.  He attached complaints filed with the Department of Justice, to include a Civilian Complaint filed with the United States Attorney's Office naming Dopico and accusing the First Department's Attorney Grievance Committee of improperly investigating and harassing him, *id.* at 1-2, and a report to the Department of Justice's Civil Rights Division naming the New York County Lawyers Association's Fee Dispute Committee and alleging "an institutionally racist and discriminatory environment for minority attorneys," *id.* at 42-44.  And

14

while Plaintiff attached copies of four additional Form 95s, none of them concern allegations

relating to claims against the federal government in the Amended Complaint, *i.e.*, an alleged failure

to investigate criminal activity.  Rather, those Form 95s concern the rejection of Plaintiff's judicial

complaints, *id.* at 5-8, his complaints about not receiving a fair hearing apparently because of the

constitution of the panel for a Second Circuit appeal, *id.* at 9-10, his allegations of statements made

by an FBI agent who called Plaintiff in connection with an investigation, *id.* at 11-12, and his

allegations of misconduct and behavior by someone, including accusations that Plaintiff was

targeted by Jewish organized crime, and request for an investigation, *id.* at 28-32.  None of these

submissions satisfy the FTCA's exhaustion requirement under 28 U.S.C. § 2675(a) and 28 C.F.R.

§ 14.2(a) with respect to Plaintiff's claims against the federal government in the Amended

Complaint.

But even if Plaintiff were to satisfy the FTCA's exhaustion requirement, he lacks a viable

cause of action against the United States.  In the Standard Form 95, attached to the December 23,

2023 Response, Plaintiff wrote:

> As I have reported in other state and federal lawsuits, as well as current SDNY
> lawsuit case index no 23-CV-9292, for the past 21 years, the FBI NYC Field Office
> or FBI IC3 has virtually never provided assistance, protection, or guidance to
> undersigned when he was a victim of serious crime, including but not limited to
> death threats, extortion, blackmail, aggravated harassment, and other crimes by
> organized crime or individual criminals, most notably [J]ewish organized crime,
> that is the subject of this lawsuit.  In fact most times the NYC Field Office and
> NYPD First Precinct would turn on undersigned when he (see attached)[.][4]

---

[4] In Plaintiff's December 23, 2023 Response, it was not clear what if anything was
"attached" to the Standard Form 95.  Another document attached to Plaintiff's December 23, 2023
Response was an OPR complaint against the "NYC FBI FIELD OFFICE," which contained largely
identical language, stating  that "most times the NYC FBI Field Office  and NYPD First Precinct
would turn on undersigned when he reported crime, rather than go after the criminals themselves."
Dkt. 53-1 at 62.

Dkt. 53-1 at 1.  Plaintiff's allegations in the Amended Complaint similarly appear to be based on the FBI's supposed failure to investigate criminal activity and to protect him from harm.  *See* Am. Compl. ¶¶ 20a-20f.  Yet a federal law enforcement agency's decision to conduct an investigation in response to reports of criminal activity is a discretionary function that is not cognizable under the FTCA.  *See* 28 U.S.C. § 2680(a) (excluding from the FTCA's waiver of sovereign immunity "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused"); *Valdez v. United States*, No. 08 Civ. 4424 (RPP), 2009 WL 2365549, at *7 (S.D.N.Y. July 31, 2009) (concluding that "decisions about how to conduct investigations fall squarely within the discretionary function exception" to the FTCA); *see also Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.").

In his December 23, 2023 Response, Plaintiff contended that he has alleged that the FBI (along with the NYPD and the Attorney Grievance Committee) had undercover agents and informants harm him: "The Court should also be reminded that we allege (with evidence) that the FBI, NYPD, and [the Attorney Grievance Committee] worked in tandem, together, to send dangerous and mentally unstable undercovers and informants who committed crimes and intentional torts against plaintiff[.]"  Dec. 23, 2023 Response at 3.  And then in his January 2, 2024 Response, Plaintiff similarly contended that "the court ignores that we also allege intentional torts causing personal injury, not just failures to investigate, as well as sending undercovers and informants who committed intentional torts/criminal acts against us, causing substantial personal

injury, not just that the FBI/NYPD refused to investigate crime against us." Jan. 2, 2024 Response at 2. These allegations are nowhere to be found in the Amended Complaint. *See generally* Am. Compl.; *see, e.g.*, *Campbell v. Columbia Univ.*, No. 22 Civ. 10164 (VSB), 2023 WL 6038024, at *4 (S.D.N.Y. Sept. 15, 2023) ("The Court is limited to consideration of the facts as stated in the complaint, any documents which are attached to the complaint, and any documents which are incorporated by reference into the complaint." (quotation omitted)). But regardless, the Court need not give weight to such speculative allegations, which, notwithstanding his suggestion that the allegation was "with evidence," have no factual support in Plaintiff's allegations. *See Gallop*, 642 F.3d at 368 ("While, as a general matter, [the plaintiff] or any other plaintiff certainly may allege that the most senior members of the United States government conspired to commit acts of terrorism against the United States, the courts have no obligation to entertain pure speculation and conjecture.").

For all these reasons, subject matter jurisdiction is lacking over any FTCA claims because Plaintiff has failed to exhaust his administrative remedies and, even were Plaintiff to exhaust them, he does not have a viable cause of action against the United States under the FTCA based on the allegations against the federal government in the Amended Complaint. Any claims under the FTCA therefore are dismissed.

### 3. Federal Claims Against Reardon, Shea, Dopico, and Justice Acosta

Plaintiff seeks $20 million in damages from the four Individual Defendants—Reardon as the Chairwoman of the First Department's Attorney Grievance Committee, Shea as an attorney with the First Department, Dopico as the Chief Attorney of the First Department's Attorney Grievance Committee, and Justice Acosta as the Presiding Justice of the First Department—arising from attorney disciplinary proceedings in the First Department. *E.g.* Am. Compl. ¶ 4 ("As this lawsuit demonstrates, defendants are weaponizing the judicial and legal system, abusing their

17

position and power to remove Plaintiff's law license of 21 years, 'soft kill' the plaintiff on behalf of Jewish Organized Crime, Extremist Jewish Zionist donors, financial contributors, oligarchs, within their orbit and sphere of influence . . . ."). He accuses Reardon of "going after . . . [Plaintiff] and [his] law license and law firm," *id.* ¶ 19, and alleges that Shea, Dopico, and Justice Acosta "have been actively aiding and abetting Abigail Reardon's crazed and ruthless crusade against . . . Plaintiff for many years, breaking numerous laws and ethics along the way," *id.* ¶ 20. There is no allegation of conduct taken by any of these Defendants outside of the scope of their official responsibilities. In the December 22, 2023 Order, the Court provided Plaintiff notice of its intent to dismiss his claims against each of these Individual Defendants on absolute judicial and quasi-judicial immunity. *Manchanda I*, 2023 WL 8879226, at *7. Plaintiff has not provided any basis to establish that any of these individuals can face liability for violations of federal law in this case, citing instead to fanciful allegations of corruption, criminal acts, and tortious conduct that are bereft of any allegations in support. *See, e.g.*, Dec. 23, 2023 Response at 2, 3.

Judges are absolutely immune from suit for damages for actions taken within the scope of their judicial capacity, provided the actions are not taken "in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (citations omitted). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature," *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009), and in regards to such acts, "even allegations of bad faith or malice cannot overcome judicial immunity," *id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). "[T]he scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Based on the allegations in the Amended Complaint, this immunity extends to each of the Individual Defendants.  Plaintiff sues Justice Acosta for damages in connection with his acts when presiding over Plaintiff's attorney disciplinary proceedings.  New York State judges who preside over attorney disciplinary proceedings have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities.  *See, e.g.*, *McNamara v. Kaye*, No. 06 Civ. 5169 (DLI), 2008 WL 3836024, at *6 (E.D.N.Y. Aug. 13, 2008) ("A number of plaintiff's claims are directed at the . . . Chief Judge of New York State, the . . . Presiding Justice of the Second Department, and the other judicial officers of the Court of Appeals and the Second Department who were involved in plaintiff's disciplinary proceedings. . . .  It is well-settled that judges have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities."), *aff'd*, 360 F. App'x 177 (2d Cir. 2009) (summary order); *Bernstein v. New York*, 591 F. Supp. 2d 448, 463 (S.D.N.Y. Aug. 8, 2008) ("Attorney disciplinary proceedings are 'judicial in nature,' so the presiding officers are protected by absolute immunity." (footnote omitted)); *Sassower v. Mangano*, 927 F. Supp. 113, 120 (S.D.N.Y. 1996) ("As a result, Sassower has alleged no basis upon which a fact finder could rationally infer that defendant Judge Mangano and the associate justices of the Second Department acted outside their proper jurisdictional capacities in adjudicating Sassower's disciplinary petition and claims raised in relation thereto, let alone that they acted in the 'clear absence of all jurisdiction.'" (citation omitted)), *aff'd*, 122 F.3d 1057 (2d Cir. 1997) (unpublished opinion).

Turning to the remaining Individual Defendants, Plaintiff seeks damages from Reardon, Shea, and Dopico arising from their efforts to investigate him in connection with attorney disciplinary charges and/or with respect to efforts to prosecute him concerning those charges before the First Department.  *See* Am. Compl. ¶¶ 19,20.  Staff members of state court attorney

grievance committees, including those serving in such roles as these three individuals, are entitled to quasi-judicial immunity.  *See e.g.*, *Neroni v. Coccoma*, 591 F. App'x 28, 30 (2d Cir. 2015) (summary order) (citing *Anonymous v. Ass'n of the Bar of the City of New York*, 515 F.2d 427, 433 (2d Cir. 1975)); *McKeown v. N.Y. State Comm'n on Jud. Conduct*, 377 F. App'x 121, 124 (2d Cir. 2010) (summary order) ("Prosecutors, hearing examiners, and law clerks are eligible for absolute immunity, and those involved in preparing and adjudicating attorney discipline proceedings share analogous roles." (citing, *inter alia*, *Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988))); *Napolitano v. Saltzman*, 315 F. App'x 351, 351-52 (2d Cir. 2009) (summary order) ("Saltzman enjoys absolute immunity for his actions as counsel to the Grievance Committee, which are 'quasi-public adjudicatory [or] prosecutorial' in nature.  In receiving the complaints about [an attorney], investigating them, and making recommendations to the Appellate Division, Saltzman was clearly acting within the scope of his jurisdiction.  The allegation that he may have violated procedural or ethical rules is irrelevant, as it is the nature of the act and not the impropriety of the act that matters." (citations omitted)); *Feng Li v. Rabner*, No. 15 Civ. 2484 (KBF), 2015 WL 1822795, at *4 (S.D.N.Y. Apr. 22, 2015) ("Because a state grievance committee acts 'as a quasi-judicial body,' its members are entitled to quasi-judicial immunity.  Insofar as [the plaintiff] names [grievance committee staff members] for their involvement in the disbarment action, they are entitled to quasi-judicial immunity." (citations omitted)), *aff'd*, 643 F. App'x 57 (2d Cir. 2016) (summary order); *Finn v. Anderson*, No. 12 Civ. 5742 (VB), 2013 WL 12085092, at *9 (S.D.N.Y. Sept. 6, 2013) ("[P]ersons working for Grievance Committees, conducting investigations and proceedings, act in a quasi-judicial capacity.  Indeed, . . . counsel to New York State Grievance Committees are included among the others who are afforded absolute quasi-judicial immunity."), *aff'd*, 592 F. App'x 16, 19 (2d Cir. 2014) (summary order) ("This Court has consistently extended

such 'quasijudicial' immunity to investigators with attorney grievance committees . . . ."); *Weissbrod v. Gonzalez*, No. 13 Civ. 2565 (JMF), 2013 WL 12084506, at *3 (S.D.N.Y. May 2, 2013) ("[B]ecause state bar disciplinary proceedings are clearly judicial in nature, quasi-judicial immunity bars Plaintiff[']s claims against these members of the First Departmental Disciplinary Committee." (citations omitted)), *aff'd*, 576 F. App'x 18 (2d Cir. 2014) (summary order); *Thaler v. Casella*, 960 F. Supp. 691, 700 (S.D.N.Y. 1997) ("[M]embers of bar association disciplinary committees are absolutely immune from suit for damages in their individual capacity, since they act in a 'quasi-public adjudicatory or prosecutorial capacity'. . . . It goes almost without saying that if . . . [the] Chief Counsel to the Grievance Committee is absolutely immune, his law clerk . . . is likewise immune." (citations omitted)); *Sassower*, 927 F. Supp. at 120-21 ("[B]ecause state bar disciplinary proceedings are clearly judicial in nature, quasi-judicial immunity bars claims against state bar disciplinary committee members . . . and the members of the Grievance Committee." (footnote and citations omitted)).

The Court acknowledges that Plaintiff has suggested that these Individual Defendants engaged in conduct that is not protected by immunity: "Plaintiff would like to remind this court, that there is no judicial or quasi-judicial immunity for intentional torts or criminal acts proximately resulting in serious personal injury, as is the case here[.]" Dec. 23, 2023 Response at 2; *accord id.* at 4 (similar). He further contended in his Responses that the Attorney Grievance Committee (and presumably the Individual Defendants) "worked in tandem" with the FBI and the NYPD "to send dangerous and mentally unstable undercovers and informants who committed crimes and intentional torts against plaintiff," *id.* at 3; *accord id.* at 4 (similar), an allegation that is not in the Amended Complaint, *see generally* Am. Compl. The Amended Complaint does allege, however, that Reardon "is abusing her position . . . by going after lawyers," like Plaintiff, "who criticize or

file lawsuits against her Jewish billionaire oligarch cronies and business contacts, or criticize U.S. foreign policy" as to Israel, and suggests that she is doing so because these unspecified "wealthy Jewish billionaire oligarchs" had "bail[ed] her out financially." *Id.* ¶ 19. And as to the other three Individual Defendants, he alleges, without any specific factual allegations, that they "have been actively aiding and abetting Abigail Reardon's crazed and ruthless crusade against undesigned Plaintiff for many years, breaking numerous laws and ethics along the way." *Id.* ¶ 20. Here too, the Court does not give weight to such fanciful and speculative allegations, which find no support in the Amended Complaint's factual allegations. *See Gallop*, 642 F.3d at 368.

In sum, because Plaintiff has not made any plausible allegation suggesting that any of these individuals acted outside their judicial or quasi-judicial capacity or lacked jurisdiction when they acted, all federal claims against the Individual Defendants are dismissed as frivolous pursuant to doctrines of absolute judicial and quasi-judicial immunity. *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))); *see also Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].").

### 4. Federal Claims Against the NYPD and the City of New York

In the December 23, 2023 Order, the Court gave Plaintiff notice of its intent to dismiss any claims against the NYPD because, as an agency of the City of New York, the NYPD is not a separate entity that can be sued. *Manchanda I*, 2023 WL 8879226, at *7; *see* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York,* 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A]

plaintiff is generally prohibited from suing a municipal agency."). In his Responses, Plaintiff offers no argument for why the NYPD is a proper defendant in this case. The Court therefore dismisses his federal claims against the NYPD.

To the extent Plaintiff actually intends to sue the City of New York—which potentially could be a proper defendant—such federal claims are not viable. *See Manchanda I*, 2023 WL 8879226, at *7-8. Liberally construing the Amended Complaint, the Court presumes that Plaintiff's primary theory for the City's liability falls under 42 U.S.C. § 1983, which is the statute pleaded in the first cause of action, Am. Compl. ¶¶ 21-22, and concerns the alleged failure of the NYPD to investigate crimes committed against him and to protect him from harm, *see id.* ¶¶ 20a-20d. Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In *Monell*, the Supreme Court recognized such municipal liability when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690; *see id.* at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government

as an entity is responsible under § 1983.").  A plaintiff may plead facts of a policy or custom by

alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> governmental officials responsible for establishing the municipal policies that
> caused the particular deprivation in question; (3) a practice so consistent and
> widespread that, although not expressly authorized, constitutes a custom or usage
> of which a supervising policymaker must have been aware; or (4) a failure by
> policymakers to provide adequate training or supervision to subordinates to such
> an extent that it amounts to deliberate indifference to the rights of those who come
> into contact with the municipal employees.

*Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City*

*of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).  "Absent such a custom, policy, or

usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its

employee."  *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012).  Further, if there is no

underlying constitutional violation, any claim of municipal liability under Section 1983 must fail.

*See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

The Amended Complaint not only is devoid of any allegations to establish the existence of

an unconstitutional municipal policy or custom that caused Plaintiff's injuries, it even lacks

allegations that he suffered any violation of a constitutional right.  As Plaintiff seems to concede,

*see* Am. Compl. ¶ 20d,[5] there is no federal constitutional duty for a government official to

investigate criminal activity or to protect an individual from harm.  *See Town of Castle Rock v.*

*Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489

U.S. 189, 195-96 (1989); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994); *see also*

*Baltas v. Jones*, No. 3:21-CV-469 (MPS), 2021 WL 6125643, at *14 (D. Conn. Dec. 27, 2021)

("[The plaintiff] has no 'constitutional right to an investigation of any kind by government

---

[5] Plaintiff "understand[s] and acknowledges that per several United States Supreme Court
decisions, that the NYPD and FBI have 'no duty to protect'" him.  Am. Compl. ¶ 20d.

officials.'" (citation omitted)); *Buari v. City of New York*, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) ("[T]here is no constitutional right to an adequate investigation. . . . Accordingly, a failure to investigate is not independently cognizable as a stand-alone claim under Section 1983." (internal quotation marks and citation omitted)).  Two recognized exceptions exist to this general rule: (1) "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon [the state actor] a corresponding duty to assume some responsibility for his safety and general well-being," *DeShaney*, 489 U.S. at 199-200; and (2) when a state actor affirmatively creates or increases a danger to the plaintiff, *see, e.g.*, *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008).  Even if a plaintiff can plead a Section 1983 claim that falls within one of these exceptions, the plaintiff must further show that the state actor's "behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Id.* (citation omitted).  Plaintiff alleges no facts suggesting that either of these two exceptions would apply.  *See generally* Am. Compl.

The Court also notes, as it did with respect to the claims against the other Defendants, *see supra* III.B.2, III.B.3, that Plaintiff has contended in his Responses that the NYPD—along with the FBI and the Attorney Grievance Committee—sent "dangerous and mentally unstable undercovers and informants who committed crimes and intentional torts against" him.  Dec. 23, 2023 Response at 3; *accord* Jan. 2, 2024 Response at 2 (similar).  As noted above, such allegations are nowhere to be found in the Amended Complaint.  *See generally* Am. Compl.  And here too, the Court need not give weight to such speculative allegations, which lack factual support in Plaintiff's allegations.  *See Gallop*, 642 F.3d at 368.

The Court therefore dismisses, for failure to state a claim, any Section 1983 claim Plaintiff intends to bring against the City of New York.  Further, as the Court also previewed in its December

22, 2023 Order, the Amended Complaint contains no allegations that would establish the City's liability under the ECPA, Am. Compl. ¶¶ 25-26, or the CFAA, *id.* ¶¶ 27-28.  *See Manchanda I*, 2023 WL 8879226, at *8.  Thus, Plaintiff's federal claims against the NYPD and, to the extent he seeks to bring them, against the City are dismissed.

## IV.  Supplemental Jurisdiction

Having dismissed all of Plaintiff's federal claims, the Court turns to whether it should exercise supplemental jurisdiction over the remaining state law claims.[6]  A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  The statute does not create a "mandatory rule to be applied inflexibly in all cases."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Nevertheless, the Second Circuit has held that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Kelsey v. City of New York*, 306 F. App'x 700, 703 (2d Cir. 2009) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see also Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the federal claim, citing "the absence of a clearly articulated federal interest"); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule

---

[6] The Amended Complaint does not allege diversity of citizenship for purposes of 28 U.S.C. § 1332, *see* Am. Compl. ¶¶ 1-2, so the Court assumes that Plaintiff is relying on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for his state law claims.

12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction." (internal quotation marks omitted)).

In its December 22, 2023 Order, the Court also put Plaintiff on notice of its intent to decline to exercise supplemental jurisdiction over his state law claims in the event his federal claims are dismissed.  *Manchanda I*, 2023 WL 8879226, at *9.  Plaintiff has provided no compelling argument for why the Court should exercise supplemental jurisdiction over his state law claims upon dismissal of the federal claims.  Rather, the relevant considerations point strongly in favor of declining supplemental jurisdiction.  The case is still in the early stages of litigation, without discovery having yet commenced, and comity dictates that Plaintiff's state law causes of action are better suited for resolution in state court.  *See Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 453 n.63 (S.D.N.Y. 2007) ("[A]t early stages in the proceedings, . . . little is to be gained by way of judicial economy from retaining jurisdiction.").

The Court thus concludes that the balance of the relevant factors points toward declining to exercise supplemental jurisdiction over Plaintiff's state law claims now that his federal claims are dismissed.  Accordingly, the Court declines to exercise supplemental jurisdiction over the Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action, and dismisses them as well.

## V.  Leave to Amend

Lastly, although Plaintiff has not sought leave to amend in the event of dismissal, the Court declines to *sua sponte* grant Plaintiff leave to replead his claims.  Plaintiff has amended his Complaint once as a matter of course, pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure, adding the FBI and the NYPD as Defendants.  Rule 15(a)(2) therefore would apply to any further amendment of his Complaint.  Under Rule 15(a)(2), a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  When deciding whether to *sua sponte* grant leave to amend, "courts will consider many factors, including undue delay, bad faith or dilatory

motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility." *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020).

In the December 22, 2023 Order, the Court additionally provided Plaintiff with notice of its intent to decline to grant leave to amend the Amended Complaint in the event it dismisses his federal claims and declines to exercise supplemental jurisdiction. *Manchanda I*, 2023 WL 8879226, at *9. Plaintiff has not responded by requesting leave to amend his pleadings, let alone has he provided any arguments for why he should be allowed to do so. Rather, and for reasons discussed above, the Court is of the view that Plaintiff's federal claims are clearly without merit as they lack any basis in the law. The Court therefore denies him leave to replead these claims on futility grounds. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."). And without federal claims in this case, there would be no basis for this Court to exercise jurisdiction over Plaintiff's state claims, *see supra* IV, so repleading them too would be futile.

## VI. Conclusion

As another judge in this District recently observed, "Manchanda is not a stranger to this court." *Manchanda v. Att'y Grievance Comm. for First Jud. Dep't*, No. 23 Civ. 3356 (JLR), 2023 WL 3091787, at *2 (S.D.N.Y. Apr. 26, 2023). From ECF, it appears that, since 2012, he has filed, as a *pro se* plaintiff, at least fifteen civil actions in this District. One judge of this District warned Plaintiff, almost nine years ago, "that the continued filing of frivolous or meritless lawsuits will result in an order barring Plaintiff from filing any new action in this Court without prior

permission." *Manchanda v. Bose*, No. 15 Civ. 2313 (VSB) (S.D.N.Y. Apr. 16, 2014), Dkt. 3 at 8-9 (citing 28 U.S.C. § 1651). Less than two years ago, the Second Circuit similarly warned Plaintiff, when he "filed a pro se pleading in [an] appeal that contain[ed] racist and anti-Semitic comments" after "ha[ving] done so in the past," "that the use of any similar language in future filings in this Court will result in sanctions, regardless of whether the filing is otherwise duplicative, vexatious, or meritless." *Manchanda v. Senderoff*, No. 21-1909, 2022 WL 167261, at *1 (2d Cir. Mar. 24, 2022) (unpublished). Once again, Plaintiff's Amended Complaint in this case was not only patently without merit, but also contained offensive and anti-Semitic accusations. This case unfortunately demonstrates that the actions of Plaintiff—an attorney who certainly should know to conduct himself better—have not improved.

For the reasons set forth above, the Court dismisses *sua sponte* Plaintiff's federal claims (*i.e.*, the First, Second, Third, and Fourth Causes of Action)—without prejudice only to the extent that the Court lacks subject matter jurisdiction, as detailed above, *see supra* III.B.2—declines to exercise supplemental jurisdiction over his state law claims (*i.e.*, the Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action) and dismisses those claims, and denies Plaintiff leave to amend his Amended Complaint. The Clerk of the Court is respectfully directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

Dated:   February 1, 2024
         New York, New York

_____
JOHN P. CRONAN
United States District Judge

29